IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

FILED
OCT 1 5 2004
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

DANIEL HENRY, )
 )
    Petitioner, )
 )
v. ) Civil Action No. 5:04-0661
 )
MARTY ANDERSON, )
 )
    Respondent. )

## PROPOSED FINDINGS AND RECOMMENDATION

## PROCEDURAL AND FACTUAL BACKGROUND

On June 29, 2004, Petitioner, in confinement at FCI Beckley, West Virginia, acting *pro se*, filed an "Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody" including a Memorandum in Support of § 2241 Motion for Daniel Henry and Request for Emergency Relief. (Document No. 1.)[1] Petitioner also filed a Motion for Expedient Consideration. (Document No. 2.) By Standing Order, the District Court referred this matter to this Magistrate Judge for submission of Findings and Recommendation for disposition. (Document No. 3.) On August 30, 2004, the undersigned filed an Order to Show Cause requiring Respondent to show cause, if any, why the writ of habeas corpus sought by Petitioner should not be granted. (Document No. 6.) Respondent filed his Response to Order to Show Cause on September 17, 2004. (Document No. 8.) Petitioner filed a Traverse to Bureau of Prison's Response to his § 2241 Motion with Emergency Relief Requested on September 28, 2004. (Document No. 9.)

Petitioner states that he pled guilty to charges that he violated 18 U.S.C. § 922(a)(1)(A) and

---

[1] Because Petitioner is acting *pro se*, these documents are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

924(a)(1)(D) on August 17, 2002, in the Northern District of New York and was sentenced to fifty months incarceration. (Document No. 1, Petitioner's Memorandum, p. 1.) He was admitted into the Residential Drug and Alcohol Program on January 21, 2003, and completed the Program on November 7, 2003.[2] He states that he received a one year reduction of his sentence and was transferred on December 23, 2003, to a Community Correction Center [CCC] in Albany, New York, to serve an additional six months. He states that his projected release date was June 16, 2004. (Id., 1-2.)

Petitioner states, however, that he was charged on March 5, 2004, with violating a rule of the CCC prohibiting use of alcohol.[3] Petitioner states that on March 5, 2004, he was breathalyzed and found to have an alcohol level of .035. He states that pursuant to Bureau of Prisons Program [BOP] Statement 6590.07[4] he was to be breathalyzed again fifteen minutes later "to allow for any false

---

[2] Pursuant to 18 U.S.C. § 3621(b), the Bureau of Prisons is required to make available an appropriate drug and alcohol treatment program for treatable prisoners. On September 14, 1994, Congress enacted the Violent Crime Control and Law Enforcement Act which amended § 3621 to allow the BOP to grant federal inmates convicted of nonviolent offenses up to one year sentence reductions for the successful completion of the program. 18 U.S.C. §3621(e)(2)(B). The undersigned notes the permissive language of the statutory text stating that the BOP "may" reduce the sentence of a nonviolent offender who successfully completes the drug program. *See Pelissero v. Thompson*, 170 F.3d 442, 444 (4th Cir. 1999).

[3] The Court notes that making, possessing or using intoxicants is prohibited act 222 and in the High Category on the BOP's Prohibited Acts and Disciplinary Severity Scale. Among the sanctions which may be imposed for committing a High Category prohibited act are disciplinary transfer and removal from a program and/or group activity. *See* 28 C.F.R. § 541.13.

[4] Program Statement 6590.07 sets forth a procedure for alcohol surveillance and testing. It states the following testing procedure:

- Employees shall ensure that the inmate being tested is not permitted to eat, drink or smoke.
- A reading of .02 or higher shall be considered positive.
- If the first test is positive, a second confirmation test shall be administered 15 minutes after the initial test.

2

positive readings in the initial test." He states that the incident report indicates that his second test also indicated that he had an alcohol level of .035. Petitioner claims that on March 8, 2004, he asked to see the incident report, and it indicated that his second breathalyzer test was administered five minutes, not fifteen minutes after the first. He claims that staff member Andy Zapp commented that the test would have to be thrown out because of this error. (Id., p. 2.) Petitioner states that he was served with a copy of the incident report an hour later and saw that it was altered to reflect that the second breathalyzer test was administered fifteen minutes after the first, not five minutes.[5] A disciplinary hearing was held about an hour and a half later with Disciplinary Hearing Officer [DHO], Mr. Ramirez, presiding. Petitioner states that it was determined that the incident report had been altered, and it was noted in the Center Disciplinary Committee [CDC] report. Petitioner claims that he requested that witnesses appear to testify at the hearing including the staff person who showed him the incident report before it was served upon him, but witnesses were contacted by telephone and Plaintiff did not participate in the discussions. Petitioner states that he was found

---

The Program Statement provides further that "[i]f the confirmation test registers .02 or higher, an incident report shall be prepared . . . charging the inmate with using intoxicants."

[5] Petitioner has attached a copy of the March 5, 2004, incident report to his Memorandum. In it, CCC Monitor Sabrena Helms charged as follows:

> Resident Henry returned to facility from work @ 5:37 pm. Resident was breathalized. His BAC level was .035. I waited for 15 min. Resident was breathalized again his BAC still reading .035. Resident insisted on he had not been drinking. I told him I can smell the alcohol on him and it was strong. The case manager also acknowledged smelling alcohol on him. I called the on call person which was Andy. He did not return my call. I then immediately contacted the Director Mr. Ramirez to inform him of the situation.

The incident report relates that Petitioner answered the charge by stating that "I was not drinking. I have breath mints that smell like liquor. I did [not] know it has alcohol in it."

3

guilty of the charge and transferred to FCI Beckley to serve the remainder of his sentence. Petitioner states that on April 5, 2004, he appealed the DHO's finding of guilt to the Northeast Regional Office of the Bureau of Prisons, and the Regional Office responded on May 5, 2004, that "a complete record for this incident report has not been provided for review." The Regional Office further stated that "[i]t is not clear if the inmate was provided with a copy of the CDC report. As of this date we have been unable to retrieve a copy of the CDC report." Petitioner claims that the Regional Office remanded the disciplinary action with instructions to provide him with a copy of the CDC hearing paperwork. Petitioner claims that the Regional Office further stated that "[i]f the CDC report cannot be relocated, the incident report may be re-issued to the inmate, the disciplinary process must then be recommenced and a new hearing must be held. In the alternative the incident report may be expunged."[6] (Petitioner's Memorandum, p. 3.) Petitioner states that he did not receive any further documentation and managed to call the matter to the attention of DHO Kilgore at FCI Beckley. Petitioner states that DHO Kilgore expunged the matter on June 18, 2004, but on June 18, 2004, he was advised that the it was "reinstated, including all findings and sanctions by the Northeastern Regional office, completely usurping the authority of DHO Kilgore . . . ." (Petitioner's Memorandum, p. 4.) Petitioner states that he "is bringing the matter before the court at this time because his appeal regarding the matter, which was originally ruled in his favor, has since been denied. He has been

---

[6] Petitioner has attached a copy of the Regional Office's May 5, 2004, response to his Memorandum. The response actually states as follows:

> A review of this disciplinary action reveals a complete record for this incident report has not been provided to this office for review. Additionally, it is not clear if you were provided with a copy of the CDC report. Accordingly, this disciplinary action is being remanded. The Community Corrections Manager is being instructed to provided you with a copy of the CDC report. Upon receipt of the CDC report, you may resubmit your appeal to this office.

4

informed that he cannot pursue the matter until he receives copies of the CDC report, however, he has yet to receive any copies to date. Any attempt at exhausting his administrative remedies would be futile and each day of delay denies [him] the freedom that he is entitled." (Petitioner's Memorandum, p. 4.) Thus, asserting the BOP's numerous violations of rules and regulations, Petitioner contends that he has been denied due process and his right to liberty. Petitioner's projected release date is now July 19, 2005.

Respondent does not take issue with the Petitioner's statement of the facts in its Response to the Court's Order to Show Cause, but, based upon the Declaration of Sharon Wahl, Legal Instruments Examiner for the Beckley Consolidated Legal Center at FCI Beckley, Respondent states that "[o]n September 7, 2004, the incident report at issue in the case at hand was ordered expunged. A new incident report was issued on September 9, 2004, and the disciplinary process has been recommenced." (Document No. 8.) Citing 28 C.F.R. § 541.19[7], Respondent states that the BOP can remand disciplinary matters for rehearing as long as the sanction imposed is not increased. Citing case law, Respondent states that disciplinary matters can be reinstated after they have been expunged. Respondent states that "[a]s the new disciplinary hearing will cure any defects in the

---

[7] 28 C.F.R. § 541.19 provides as follows respecting appeals from decisions of Disciplinary Hearing Officers:

> At the time the . . . Discipline Hearing Officer gives an inmate written notice of its decision, the . . . DHO shall also advise the inmate that the inmate may appeal the decision . . . . An inmate's initial appeal of a decision of the DHO should be filed directly to the appropriate Regional Office. The inmate should forward a copy of the DHO report or, if not available at the time of filing, should state in his appeal the date of the DHO hearing and the nature of the charges against the inmate. On appeals, the appropriate reviewing official (the Warden, Regional Director, or General Counsel) may approve, modify, reverse, or send back with directions including ordering a rehearing, any disciplinary action of the . . . Discipline Hearing Officer but may not increase any valid sanction imposed.

original proceedings, this Petition should be dismissed." Respondent states that once the disciplinary proceedings are concluded, Petitioner will be entitled to challenge them through the administrative remedies available to him and then by filing a Petition for relief under 28 U.S.C. § 2241 as he has in this case.

Citing 28 C.F.R. §§ 541.15[8] and 541.17[9] and distinguishing cases which Respondent cited

---

[8] Petitioner refers to 28 C.F.R. § 541.15 (a) and (i) which provides as follows:

(a) Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge9s0 against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

(i) When charges are to be referred to the Disciplinary Hearing Officer, the UDC shall advise the inmate of the rights afforded at the hearing before the DHO. The UDC shall ask the inmate to indicate a choice of staff representative, if any, and the names of any witnesses the inmate wishes to be called to testify at the hearing and what testimony they are expected to provide. The UDC shall advise the inmate that the inmate may waive the right to be present at the Institution Discipline hearing, but still elect to have witnesses and/or a staff representative appear in the inmates behalf at this hearing.

[9] Petitioner points out that 28 C.F.R. § 541.17 begins by stating that "[t]he Discipline Hearing Officer shall proceed as follows" emphasizing the word "shall" and refers to Paragraphs (g) and (i) which state as follows:

(g) The Disciplinary Hearing Officer shall prepare a record of the proceedings which need not be verbatim. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied on by the DHO, and must include a brief statement of the reasons for the sanctions imposed. The evidence relied upon, the decision, and the reasons for the actions taken must be set out in specific terms unless doing so would jeopardize institutional security. The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision.

(i) The Displine Hearing Officer shall expunge an inmate's file of the Incident Report and related documents following a DHO finding that the inmate did not commit the prohibited act. * * * Institution staff may not use the existence of charged but unproved misconduct against the inmate.

in his Response, Petitioner states in his Travers to Respondent's Response that the BOP violated his right to due process as follows:

> The original incident report was expunged because [his] due process rights were violated when the Community Correction Center and the Regional Office failed to produce the 'appropriate CDC paperwork." (See Dodrill memo)
>
> [His] due process rights were next violated when the incident was reinstated on June 18, 2004 without benefit of a hearing. Once [he] filed his § 2241 action the respondent once again expunged the incident using that to support their argument that [his] § 2241 claim is moot.
>
> Although to date [he] has not had his rehearing before the DHO, he will be unable to properly defend himself because the witnesses who supported his claim that the original report had been altered are now unavailable, and the original CDC report, referred to in Regional Director Dodrill's memo, has yet to be found.

(Document No. 9, pp. 5-6.) Thus, Petitioner basically asserts that Respondent has not acted in compliance with prescribed procedures in charging him and holding a hearing upon the charges and is not permitted to "reprocess the disciplinary action as many times as it takes until they get it right." (Id., p. 2.) Petitioner requests that the District Court "order his immediate release and all references to the incident expunged from his record." (Id., pp. 6-7.)

## DISCUSSION

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer

of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectible right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural

guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

The BOP has broad discretion in administering inmates' sentences under 18 U.S.C. § 3621(e). See Lopez v. Davis, 531 U.S. 230, 240, 121 S.Ct. 714, 721, 148 L.Ed.2d 635 (2001)(affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following

successful completion of a drug-treatment program.").[10] Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under § 3621(e). Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999). Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the recission of their early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).[11]

---

[10] 18 U.S.C. § 3621(e)(2) provides as follows:

**(2) Incentive for prisoners' successful completion of treatment program. –**
**(A) Generally.** – Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such condition on determining that substance abuse has recurred.
**(B) Period of custody.** – The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

[11] Consistent with the broad discretion allotted to the BOP, the BOP has issued Program Statement 5330.10 stating at Chapter 6, Section 5, as follows respecting loss of provisional early release:

An inmate may lose his or her provisional early release at any time for failure to successfully complete all components of the drug treatment program (including transitional services), or for committing certain prohibited acts. Inmates are to be advised that they may use the administrative remedy procedure to appeal decisions

Petitioner asserts essentially that he was entitled to a one-year sentence reduction for completing the BOP's Drug Abuse Program, and, because he became subject to the loss of his one-year sentence reduction by virtue of the BOP's disciplinary proceedings, he was entitled to due process. Petitioner further asserts that his due process rights have been violated because the BOP failed in several ways to follow the procedures set forth in the Code of Federal Regulations. Neither of these claims have merit. Petitioner is not in custody in violation of the Constitution or laws of the United States. Petitioner has no legitimate claim of entitlement to early release under 18 U.S.C. § 3621(e). Petitioner has not identified, and the Court has not found, language in any statute, regulation or Program Statement mandating that inmates who complete the Drug Abuse Program be granted

---

regarding early release.

Chapter 6, Section 5.2, provides in part that

> An inmate shall lose his or her provisional early release date immediately if the DHO/UDC finds the inmate, pursuant to an incident report, to have:
>
> ■ Used or possessed alcohol or drugs[.]

Chapter 6, Section 7.1, states that

> The DHO shall recommend, at a minimum, a disciplinary transfer for any inmate who is participating in community transitional services when the inmate has a presumptive early release date, and, pursuant to an incident report is found to have committed:
>
> ■ any prohibited act involving alcohol (including but not limited to code 222)[.]

Chapter 6, Section 7.2, states that "Inmates are sometimes administratively transferred from a community-based program to a more secure setting pending the resolution of a disciplinary hearing. * * * Ordinarily, if the incident report does not result in a finding of guilt, the inmate should be transferred to a community-based program as soon as practical to resume transitional services. The inmate's provisional release date, if delayed to resolve the pending disciplinary action, may need to be adjusted a second time. If returned to a community-based program, CCM staff should adjust the release date to reflect the actual number of days community treatment services was interrupted."

early release. Rather, upon completion of the Drug Abuse Program, Petitioner's interest in early release was provisional. The BOP retained authority in its discretion to deny Petitioner early release and has established guidelines for rescinding or changing early release and transferring inmates when they are accused of violating disciplinary provisions. Because his entitlement to early release was provisional and not mandatory, recission of the entitlement and Petitioner's further custody as disciplinary sanctions cannot be said to have impacted the duration of Petitioner's sentence. Under these circumstances, Petitioner has not identified a liberty interest protected by the Due Process Clause of the Constitution. The requirement that the BOP provide the constitutionally minimum amount of due process is therefore inapplicable. It is nevertheless clear that the BOP has prescribed a process in its regulations for considering and reviewing charges which impact upon inmates' provisional entitlement to early release under § 3621(e). The undersigned finds from the record that the BOP has failed to follow its own procedures in considering the charge that Petitioner used alcohol while at the CCC which resulted in the recission of his provisional entitlement to early release. Apparently, having started and restarted the process twice in the past, the BOP has reinitiated the process once again by serving yet another violation notice upon Petitioner alleging the same offense. While this amounts to a failure of process to be sure, it cannot be said to rise to the level of a failure of process that was due because, as stated above, Petitioner had no liberty interest in the first place protected by the Due Process Clause of the Constitution in early release under 18 U.S.C. § 3621(e). For these reasons, the undersigned finds that Petitioner's Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus must be denied.

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Petitioner's Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus and remove this matter

from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schonce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

Date: October 15, 2004.

R. Clarke VanDervort
United States Magistrate Judge